IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-02900-NYW

M.L.B.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This civil action arises under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33, for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"), which denied applications for Disability Insurance Benefits and Supplemental Security Income filed by Plaintiff M.L.B. ("Plaintiff"). For the reasons set forth in this Order, the Commissioner's decision is respectfully **AFFIRMED**.

## BACKGROUND

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") with the Social Security Administration ("SSA") on

---

[1] The Local Rules provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only." D.C.COLO.LAPR 5.2(b). Accordingly, the Court refers to Plaintiff using her initials only.

August 17, 2020. [Doc. 9-5 at 392].[2] Plaintiff initially alleged that she became disabled on August 1, 2015; however, she later amended her onset date to April 17, 2018. [*Id.* at 395; Doc. 9-2 at 53].

The SSA denied Plaintiff's requests for benefits on January 11, 2021, and maintained that denial upon reconsideration on March 13, 2022. [Doc. 9-3 at 94–95, 222–23]. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), [Doc. 9-4 at 294–95], which was held on February 21, 2023, [Doc. 9-2 at 42]. ALJ Matthew C. Kawalek issued an unfavorable decision on Plaintiff's application on May 11, 2023. [*Id.* at 11–31].

In his decision, the ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2020, and that Plaintiff had not engaged in substantial gainful activity since her amended alleged disability onset date of April 17, 2018. [*Id.* at 17]. The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine; osteoarthritis of the right knee; ulnar neuropathy of the left upper extremity; a labral tear and Bankart lesion of the right shoulder; a SLAP tear and superior glenoid labrum lesion of the left shoulder; olecranon bursitis of the right elbow; Ehlers-Danlos disease/generalized hypermobility spectrum disorder; monoclonal gammopathy of known significance; a depressive, bipolar, or related disorder (variably called depression with anxiety, major depressive disorder, or depression); an anxiety

---

[2] When citing to the Administrative Record, the Court cites to the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, which is found in the bottom right-hand corner of each page. For all other documents, the Court cites to the docket and page number generated by the CM/ECF system, rather than the page numbers assigned by the Parties.

disorder (variably called anxiety, generalized anxiety disorder, or panic disorder); and attention deficit disorder. [*Id.*].

The ALJ next concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" found in the Social Security Regulations (the "Regulations"). [*Id.* at 18]. The ALJ found that Plaintiff has the residual functional capacity to perform a reduced range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [Plaintiff] can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. She can stand and/or walk 4 hours and sit 6 hours of an 8-hour workday. [She] can never crawl or climb ladders, ropes, or scaffolds, and she can occasionally balance, stoop, kneel, crouch, or climb ramps and stairs. She can perform no overhead work, including reaching, pushing, or pulling overhead. She can frequently reach in all other directions, handle, or operate hand controls with the bilateral upper extremities. She can tolerate no exposure to hazards, including unprotected heights or operating heavy machinery. Mentally, she is limited to understanding, remembering, carrying out, and maintaining attention and concentration on no more than simple tasks, defined specifically as those job duties that can be learned in up to 30 days' time. She can sustain only ordinary routines with no more than occasional changes, and she can make no more than simple, work-related decisions.

[*Id.* at 21].

The Appeals Council denied Plaintiff's request for review of the Hearing Decision, which rendered the ALJ's decision the final decision of the Commissioner. [*Id.* at 1]. Plaintiff then sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on November 2, 2023. *See* [Doc. 1]. This matter is now ripe for consideration, *see* [Doc. 10; Doc. 11; Doc. 12], and the Court considers the Parties' arguments below.

**LEGAL STANDARD**

An individual is eligible for DIB under the Act if she is insured, has not reached retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). For purposes of DIB, the claimant must prove that she was disabled prior to her date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007). In addition, SSI is available to an individual who is financially eligible,[3] files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. The earliest a claimant can receive SSI is the month after she filed her application, and thus the claimant must establish that she was disabled on or prior to her application date. *See* 20 C.F.R. §§ 416.200, 416.335; *see also id.* § 416.912(b)(1) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application.").

An individual is disabled only if the individual's "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See* 20 C.F.R. §§ 404.1509, 416.905(a).[4] When

---

[3] SSI is a needs-based program established for individuals with limited resources. *See* 20 C.F.R. § 416.110; *see also Ford v. Commissioner*, 816 F. App'x 276, 279 (10th Cir. 2020) (discussing the distinction between DIB and SSI).

[4] Section 404 of Title 20 of the Code of Federal Regulations relates to Title II of the Act and governs proceedings related to applications for DIB. *See* 20 C.F.R. § 404.1. Section 416 relates to Title XVI of the Act and governs proceedings related to applications for SSI. *See id.* § 416.101.

a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five steps contemplate the following determinations:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found in appendices to the Regulations;

4. Whether the claimant has the residual functional capacity to perform his past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's residual functional capacity, age, education, and work experience.

*See id.* §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis," while the Commissioner bears the burden of proof at step five. *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

In reviewing the Commissioner's final decision, the Court limits its inquiry to whether substantial evidence supports the decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir.

2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty*, 515 F.3d at 1070 (quotation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's," *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016), but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Flaherty*, 515 F.3d at 1070 (quotation omitted).

Remand is also warranted where the ALJ fails to apply the correct legal standard or fails to provide the reviewing court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted). But if the Court "can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

## ANALYSIS

Plaintiff identifies two issues with the ALJ's evaluation of Plaintiff's RFC at step four of the evaluation process that she argues warrant remand. *See generally* [Doc. 10]. First, Plaintiff contends that the ALJ improperly rejected the opinion of Terry Johler, M.D. ("Dr. Johler") without giving valid reasons for his decision. *See* [*id.* at 11–15]. Second, Plaintiff claims that the ALJ erred in evaluating Plaintiff's subjective statements that her symptoms produce disabling restrictions. [*Id.* at 15–19]. The Commissioner responds that a

6

reasonable reading of the record indicates that the ALJ conducted a supportability analysis of Dr. Johler's medical opinion. [Doc. 11 at 8–14]. The Commissioner also contends that the ALJ's analysis of Plaintiff's symptoms is well supported by the record and demonstrates the inconsistencies between Plaintiff's symptoms and the objective medical evidence. [*Id.* at 14–16]. The Court addresses the Parties' arguments below.

I. **Step Four Generally**

In formulating a claimant's RFC at the fourth step of the five-step evaluation process, the ALJ must consider the combined effect of all the claimant's determinable impairments. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). "A claimant's RFC 'is the most [she] can do despite [her] limitations,' and 'is based on all relevant evidence, including a claimant's credible allegations of pain.'" *G.L.T. v. Kijakazi*, No. 23-cv-00332-NRN, 2023 WL 8780953, *5 (D. Colo. Dec. 19, 2023) (quoting *Rivera v. Commissioner*, No. 22-1026, 2022 WL 17333068, at *5 (10th Cir. Nov. 30, 2022) (alterations in original)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quotation omitted).

The ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the Court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

## II.     Evaluating Medical Opinions

The Regulations identify five categories of evidence to be considered by the SSA in adjudicating a claim for benefits:  (1) objective medical evidence; (2) medical opinions; (3) other medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative medical findings.  20 C.F.R. §§ 404.1513(a), 416.913(a).  The ALJ must "consider all evidence in [the] case record when [making] a determination or decision whether [the claimant] is disabled," *id*. §§ 404.1520(a)(3), 416.920(a)(3) and the ALJ must articulate how persuasive he finds each medical source's opinion, *id.* §§ 404.1520c(a)–(b), 416.920c(a)–(b).

The persuasiveness of a medical source's opinion is evaluated using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant, which includes the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the treatment relationship is an examining relationship; (4) the medical source's area of specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding.  *Id.* §§ 404.1520c(c), 416.920c(c).

Supportability and consistency are the "most important factors" when determining the medical opinion's persuasiveness.  *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ must explain how he considered the supportability and consistency of a medical source's medical opinion in his determination; however, he is not required to elaborate as to the other factors.  *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).  "[S]upportability is an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion," whereas consistency is "an inquiry that focuse[s]

8

on how well a medical source is supported, or not supported, by the entire record." *Vellone v. Saul*, No. 20-cv-00261-RA-KHP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021); *see also* 20 C.F.R. §§ 404.1520c(b)(2), (c)(1).

***Dr. Terry Johler's Medical Opinion.*** Plaintiff argues that the ALJ failed to properly consider and explain his rejection of Dr. Johler's medical opinion. [Doc. 10 at 11–15]. Among other opinions, Dr. Johler opined that the following limitations affected Plaintiff's work-related activities:

- She is unable to stand and/or walk for even two hours in an eight-hour workday.
- She is unable to sit for even two hours of an eight-hour workday.
- She should never climb ladders, ropes, or scaffolds.
- She should never reach above her head.

*See* [Doc. 9-11 at 1900–01]. The ALJ found Dr. Johler's opinion "unpersuasive." [Doc. 9-2 at 26]. The ALJ stated, in full:

> I . . . considered the opinion of consultative examiner Terry Johler, M.D. Dr. Johler opined that the claimant is unable to stand and/or walk for even two hours in an eight-hour workday. Dr. Johler opined that the claimant is unable to sit for even two hours in an eight-hour workday. Dr. Johler opined that the claimant should never climb ladders, ropes, or scaffold. Dr. Johler opined that the claimant should never reach above her head. I find Dr. Johler's opinion to be unpersuasive, as it is inconsistent with the examination notes throughout the record. For example, the record does not support a finding that the claimant would be unable to sit, stand, or walk for two hours in an eight-hour workday. She generally displays a normal gait. She does not use a cane or other assistive device to ambulate. She generally maintains at least 4/5 strength throughout all four extremities. She does not generally present to medical examinations in any acute or apparent distress. Moreover, Dr. Johler's opinion is inconsistent with the claimant's activities of daily living. She retains the ability to shop for groceries, prepare meals, and maintain her personal care. She also reports acting as a caregiver for her aunt. She drives her daughter to-and-from work, picking her up as late as two-o-clock in the morning. Finally, Dr. Johler did not have the opportunity to review and consider the entire medical record before forming an opinion.

9

[*Id.* at 26–27 (citations omitted)].

Plaintiff argues that the ALJ committed reversible error by failing to adequately explain his consideration of supportability in his analysis of Dr. Johler's opinion. [Doc. 10 at 12–15]. According to Plaintiff, only the last sentence of the ALJ's persuasiveness analysis addresses the supportability factor. [*Id.* at 12]. Plaintiff argues that this statement alone "is wholly inadequate to comply with the regulations." [*Id.*]. The Commissioner responds that the ALJ engaged in the appropriate supportability analysis of Dr. Johler's medical opinion because a "reasonable reading of the decision demonstrates that the ALJ considered the opinion in light of both Dr. Johler's examination, and examinations from other providers." [Doc. 11 at 11].

As noted above, "[t]he most important factors in evaluating persuasiveness are supportability and consistency." *Harris v. Saul*, No. 19-cv-03715-NRN, 2021 WL 406080, *2 (D. Colo. Feb. 5, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). The Regulations require the ALJ to explain how he considered the supportability and consistency factors in his evaluation of a medical opinion. *T.D.F. v. Kijakazi*, No. 22-cv-02145-MDB, 2023 WL 6249035, *7 (D. Colo. Sept. 25, 2023). The ALJ's supportability analysis should consider "whether the medical source's opinions are supported by the source's own notes, diagnoses, and explanations." *J.T.L. v. Kijakazi*, No. 22-cv-02343-NYW, 2023 WL 5017241, *4 (D. Colo. Aug. 7, 2023) (citation omitted). Finally, while the ALJ has a "duty to address the persuasive value of [a] medical opinion[]," the Regulations give the ALJ discretion as to "*how* he articulates his findings as to the persuasive value [of a medical opinion]." *Harp v. Kijakazi*, No. 21-cv-00275-KRS, 2022 WL 2341740, *4 (D.N.M. June 29, 2022).

10

The Court finds no error here. Dr. Johler determined that Plaintiff is unable to sit, stand, or walk for two hours of an eight-hour workday in his medical report. [Doc. 9-11 at 1900–01]. The ALJ found Dr. Johler's medical opinion "unpersuasive" in part because it was "inconsistent with the examination notes throughout the record" establishing that Plaintiff "generally displays a normal gait," [Doc. 9-2 at 26 (citing [Doc. 9-7 at 627, 779; Doc. 9-8 at 1053, 1157, 1585])]; "does not use a cane or other assistive device," [*id.* (citing [Doc. 9-11 at 1897])]; and "generally maintains at least 4/5 strength throughout all four extremities," [*id.* at 26–27 (citing [Doc. 9-7 at 616, 629, 647; Doc. 8 at 1326; Doc. 9-12 at 2207])]. Like the examples cited by the ALJ, Dr. Johler's own examination notes state that Plaintiff's "gait is normal," [Doc. 9-11 at 1899]; Plaintiff has "5/5 motor function in the upper and lower extremities," [*id.*]; and, with respect to Plaintiff's need for assistive devices, that "[n]one [are] medically necessary," [*id.* at 1901].

The ALJ found that Dr. Johler's opinion that Plaintiff is unable to sit, stand, or walk for two hours of an eight-hour workday was contradicted by the medical evidence in the record identifying, inter alia, normal gait and motor function; this "medical evidence throughout the record" necessarily includes Dr. Johler's own treatment notes also reflecting Plaintiff's normal gait and motor function, notwithstanding the fact that the ALJ cited to different reports in the record to illustrate his point. In other words, Dr. Johler's opinion was neither consistent with the examination notes in the record regarding Plaintiff's gait, motor function, and need for assistive devices; nor supported by his *own* contradictory examination notes regarding Plaintiff's gait, motor function, and need for medical devices. Given that "[t]he supportability analysis looks at whether the medical source's opinions are supported by the source's own notes," *R.L.M. v. Kijakazi*, No. 22-

11

cv-03179-NYW, 2023 WL 8355963, at *8 (D. Colo. Dec. 1, 2023), this internal conflict between Dr. Johler's opinion and treatment notes goes to supportability, *cf. T.D.F.*, 2023 WL 6249035, at *7 ("So long as the ALJ describes the analytical reasoning in question, he or she does not have to use certain magic words.").

The ALJ also acknowledged that Dr. Johler "did not have the opportunity to review and consider the entire medical record before forming an opinion." [Doc. 9-2 at 27]. Thus, the ALJ found that Dr. Johler's medical opinion lacked support insofar as it was not based on a comprehensive analysis of objective medical evidence in the record. The Court finds the foregoing findings sufficiently demonstrate that the ALJ evaluated the supportability of Dr. Johler's medical opinion.

For these reasons, the Court concludes that the ALJ adequately evaluated supportability in determining that Dr. Johler's medical opinion was not persuasive.

### III.     Evaluating Pain

In considering a claimant's symptoms, like pain, an ALJ undergoes a two-step evaluation process. First, the ALJ determines "whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). If so, the ALJ will next "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4. "In making this evaluation, the ALJ considers the medical evidence of record, along with several [other] factors, including the claimant's activities of daily living." *B.A.Y. v. Commissioner*, No. 23-1265, 2024 WL 2844697, *4 (10th Cir. June 5, 2024).

In determining the consistency[5] of a claimant's subjective complaints of pain, an ALJ may consider the following factors:

(i) daily activities;
(ii) the location, duration, frequency, and intensity of pain or other symptoms;
(iii) precipitating and aggravating factors;
(iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;
(v) treatment, other than medication, received for relief of pain or other symptoms;
(vi) any measures used to relieve pain or other symptoms; and
(vii) other factors concerning functional limitations and restrictions due to pain or other symptoms.

See 20 C.F.R. § 404.1529(c)(3). This Court recognizes that "[subjective complaints] determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). Additionally, "[f]indings as to [subjective complaints] should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quotation omitted). Under Tenth Circuit precedent, "[t]he only question this court must answer is whether the ALJ's [subjective complaints] determination . . . was closely and affirmatively linked to evidence that a reasonable mind might accept as adequate to support that conclusion." *Stokes v. Astrue*, 274 F. App'x 675, 686 (10th Cir. 2008).

---

[5] The SSA has "eliminat[ed] the use of the term 'credibility'" from its policies and has "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2. Accordingly, the Court frames the ALJ's finding as a "consistency" finding with respect to Plaintiff's subjective complaints.

Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting Plaintiff's allegations that her pain produced disabling restrictions. [Doc. 10 at 15–19].

At step one, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's symptoms. [Doc. 9-2 at 18]. But at step two, the ALJ held that Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of those symptoms were not fully supported by the record. [*Id.* at 22]. Plaintiff argues that the ALJ failed to comply with SSA policy because he failed to "point to any genuine inconsistencies between Plaintiff's testimony and the record." [Doc. 10 at 16–17]. Plaintiff asserts that the ALJ declined to consider some of Plaintiff's testimony about her pain in his determination that Plaintiff has the ability to perform a reduced range of light work. [*Id.*]. The Commissioner responds that the ALJ sufficiently addressed the alleged inconsistencies between the medical evidence and Plaintiff's alleged pain in his summary of the medical evidence. [Doc. 11 at 15].

In his RFC determination, the ALJ must address the claimant's alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). The Regulations state that, "[i]n determining whether [a claimant is] disabled, [the ALJ] consider[s] all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* §§ 404.1529(a), 416.929(a). However, a claimant's statements about her pain will not alone establish disability. *Id*. §§ 404.1529(a), 416.929(a). The Regulations also require an ALJ to consider "objective medical evidence . . . that shows [the claimant] ha[s] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms." *Id.* §§ 404.1529(a), 416.929(a).

14

***Plaintiff's nerve pain.*** Plaintiff argues that the ALJ failed to address Plaintiff's testimony as to her nerve pain. [Doc. 10 at 16]. Specifically, Plaintiff contends that the ALJ declined to consider statements that "her foot feels like pins and needles and that she has trouble sitting or standing"; that "she has to lean back and keep her feet up in order to get rid of the pain and tingling in her back"; that "she has nerve pain that shoots from her back into her right leg"; that "her entire right side goes completely numb"; or that she has "spasms in her neck, back, and legs." [*Id.*].

The Court finds no error here. In his decision, the ALJ acknowledged Plaintiff's "reports [of] pain throughout her musculoskeletal system," which Plaintiff described as "constant" pain that "affect[s] her ability to sit, stand, and walk for an extended period of time." [Doc. 9-2 at 22]. The ALJ also identified specific objective test results and examination notes in the record that he found inconsistent with Plaintiff's subjective statements regarding her symptoms. [*Id.* at 22–25].

First, the ALJ discussed Plaintiff's "subjective symptoms . . . of her cervical degenerative disc disease." [*Id.* at 22]. The ALJ stated that Plaintiff underwent several tests including a CT-scan of her cervical spine in October 2020, MRI of her cervical spine in November 2021, and a nerve conduction study in November 2021. [*Id.*]. After reviewing these tests, ALJ concluded that the objective results did "not substantiate the claimant's statements regarding . . . [her] symptoms." [*Id.*].

Second, the ALJ considered the examination notes in the record relating to Plaintiff's cervical degenerative disc disease. [*Id.*]. The ALJ noted some reports of pain upon range-of-motion testing but also noted the inconsistency of these findings throughout the record. [*Id.*]. The ALJ further noted that, "despite her reported radicular

symptoms," Plaintiff maintains "at least 4/5 strength . . . throughout both upper extremities," and is "able to oppose her thumbs to her fingers." [*Id.* at 22–23]. Ultimately, the ALJ concluded that the examination notes in the record also did "not support the reported severity" of Plaintiff's symptoms. [*Id.* at 22].

**Plaintiff's joint pain.**   Plaintiff also contends that the ALJ failed to consider symptoms associated with her joints and her testimony that "due to the laxity of her joints, they 'won't stay in[]' and they repeatedly 'pop out.'" [Doc. 10 at 16].

The Court respectfully disagrees.  The ALJ acknowledged Plaintiff's "reports [of] dislocations and subluxations of both shoulders due to Ehlers-Danlos disease." [Doc. 9-2 at 22].  In evaluating whether Plaintiff's subjective complaints were consistent with objective medical evidence, however, the ALJ also pointed to specific objective test results and examination notes in the record demonstrating that her joint-related shoulder pain is "amenable to proper medical management," [*id.* at 23–24], and her joint-related knee pain requires only "conservative treatment" for "mild" issues, [*id.* at 24].

First, the ALJ considered medical test results and examination notes in the record relating to Plaintiff's Ehlers-Danlos disease, hypermobility spectrum disorder, and her right and left shoulder impairments.  [*Id.* at 23–24].  The ALJ noted that Plaintiff retains one-hundred sixty degrees of forward flexion in her right shoulder and one-hundred and seventy degrees of forward flexion in her left shoulder, maintains "at least 4/5 strength without any evidence of atrophy throughout her right upper extremity," and maintains "intact sensation and 5/5 strength throughout her left shoulder." [*Id.* at 23]. In addition, the ALJ noted that Plaintiff underwent multiple procedures on her shoulders prior to the amended onset date. [*Id.*].  Following her right shoulder surgery, Plaintiff reported "less

16

frequent instances of severe shoulder pain with functional activities." [*Id.*; Doc. 9-8 at 1278]. Post-surgical examination notes cited by the ALJ regarding Plaintiff's left shoulder described "fairly good motion in [her] shoulders." [Doc. 9-2 at 24 (alteration in original); Doc. 9-12 at 2113]. Based on the foregoing, the ALJ found that Plaintiff's alleged symptoms related to her right and left shoulder impairments are manageable with proper medical treatment. [Doc. 9-2 at 23–24].

Second, the ALJ considered Plaintiff's symptoms related to her degenerative joint disease of the right knee. [*Id.* at 24]. The ALJ reviewed the results of Plaintiff's x-rays, MRI, and reports related to her knee examinations. [*Id.*]. The ALJ also reviewed examination notes reporting Plaintiff's knee issues as "mild," [*id.*], and observing "no laxity with valgus or varus testing," [*id.*; Doc. 9-9 at 1531]. Among other things, the ALJ noted medical records indicating Plaintiff "receives conservative treatment for [her knee] impairment." [Doc. 9-2 at 24]. The ALJ also specifically acknowledged the lack of evidence to suggest that Plaintiff underwent any surgical procedures on her right knee. [*Id.*]. "The lack of surgery appears to have been used to discount the severity of the impairments, which is a legitimate consideration for the ALJ's analysis." *See Keyes-Zachary*, 695 F.3d at 1169.

In other words, the ALJ cited to record evidence supporting his conclusion that Plaintiff's subjective statements regarding her nerve and joint pain were not entirely consistent with the record. *See* [Doc. 9-2 at 22–25]. Based on the foregoing, the Court finds that the ALJ's decision is supported by the record and sufficiently addresses the alleged inconsistencies between the medical evidence and Plaintiff's subjective complaints of pain. *See H.A.M. v. Saul*, No. 20-cv-00297-SH, 2021 WL 2568044, *4 (N.D.

17

Okla. June 23, 2021) ("In evaluating an individual's symptoms," the ALJ's decision must be "consistent with and supported by the evidence[] and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." (quoting SSR 16-3p, 2017 WL 5180304, at *10)). Thus, the Court finds no error here.

Accordingly, the Court concludes that Plaintiff has not established that the ALJ committed reversible error in denying Plaintiff's applications for benefits.

## CONCLUSION

For the reasons stated herein, the Court respectfully **AFFIRMS** the Commissioner's final decision.

DATED: March 25, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge